# EXHIBIT A



UNITED STATES DEPARTMENT OF COMMERCE
**Bureau of Industry and Security**
BOSTON FIELD OFFICE
Office of Export Enforcement
10 Causeway Street, Room 350
Boston, Massachusetts 02222

July 18, 2014

Jonathan M. Malis, Esq.
Chief, Criminal Division
U.S. Attorney's Office for the
  District of Columbia
Judiciary Center Building
555 4th Street, N.W.
Washington, DC 20530

Re: <u>United States v. Fokker Services B.V., Criminal No. 14-CR-121 (RJL)</u>

Dear Mr. Malis:

I am the Special Agent in Charge, Boston Field Office, Office of Export Enforcement ("OEE"), Bureau of Industry and Security ("BIS"), U.S. Department of Commerce. My office had the lead within OEE for the case before the Court. BIS is aware that as part of the Court's consideration of the deferred prosecution agreement ("DPA") entered into between the Justice Department and the Fokker Services B.V. ("Fokker"), the Court has asked your office to address a recent press article suggesting that the Government first learned of the criminal conduct addressed in the DPA in late 2007 and early 2008.

As you know, a multi-agency investigation, including special agents from OEE, the Federal Bureau of Investigation, the Defense Criminal Investigative Service ("DCIS"), and the Department of Homeland Security ("DHS"), as well as prosecutors from the Justice Department's National Security Division and your office, had been initiated by that time focused on Aviation Services International, B.V., a Dutch company, and its principals (collectively, "ASI"). As that investigation developed, ASI provided extensive cooperation to the team of agencies over the course of more than two years relating to the activities of a substantial number of companies and individuals. This cooperation led to a number of convictions and indictments.

ASI provided certain limited information relating to Fokker in late 2007 and early 2008, which was considered by the team of agencies referenced above. (The information did not relate to the conduct of any identified individuals at Fokker). This information, when considered along with the nature and extent of information provided by ASI concerning other potential targets and the range of factors typically applied in prioritizing targets and allocating resources, did not lead to the opening of an investigation focused on Fokker by BIS or, as you have indicated, by the Justice Department prior to June 2010. You have also indicated that the Justice Department is not aware that such an investigation had been opened by DCIS, DHS, or FBI; this is consistent with BIS's understanding as well.



In June 2010, Fokker made a written submission to BIS and to the Treasury Department's Office of Foreign Assets Control ("OFAC") concerning potential violations of regulations administered and enforced by BIS and OFAC. The submission was brought to the attention of the other agencies, and the general information provided in the submission concerning potential administrative or civil violations was supplemented by Fokker in considerable detail in December 2010. The June 2010 submission occurred before BIS or, as you have indicated, the Department of Justice had opened a separate investigation focused on Fokker. You also have indicated that the Justice Department is not aware of such an investigation having been opened by DCIS, DHS, or FBI prior to the June 2010 submission; this also is consistent with BIS's understanding.

As you know, the Director of OEE has signed a proposed settlement agreement between BIS and Fokker that, if approved by the Assistant Secretary for Export Enforcement, would impose a civil penalty under the Export Administration Regulations of $10.5 million to be paid within 18 months pursuant to the terms of that agreement and the terms of a settlement agreement that Fokker has entered into with OFAC. Under the Export Administration Regulations, the BIS settlement becomes binding and final if the Assistant Secretary approves the agreement and issues a final order to that effect. These settlements are part of a proposed global settlement with Fokker that includes the DPA. OEE supports the global settlement; when the DPA is approved, we fully expect that the Assistant Secretary will approve the BIS-Fokker settlement and issue a final order to that effect. The $21 million to be paid or forfeited by Fokker as a result of the proposed global settlement would impose a strong and significant sanction, both tough and fair, and one of the largest monetary penalties to date in the export control context. It takes into account the totality of the facts and circumstances, including the company's financial condition and revenue base, which limit its ability to pay, and the company's sustained overall cooperation and the remediation steps it has taken.

BIS also is aware that the Court may have some concern that Fokker's submissions to the Government may not constitute a voluntary self-disclosure. The Justice Department, under the United States Attorneys' Manual ("USAM"), applies a definition of voluntary disclosure in the context of criminal prosecutions. BIS's Export Administration Regulations ("EAR") apply a different set of standards for voluntary self-disclosure in the context of BIS administrative sanctions. Indeed, the EAR expressly provide that if a criminal referral occurs, the determination whether a voluntary disclosure was made in connection with the criminal proceeding is for the Justice Department and that BIS's determination does not bind Justice. 15 C.F.R. § 764.5(b)(4). Nor does the Justice Department determination bind BIS's consideration of the administrative sanctions BIS imposes for violations of the EAR.

In its consideration of an appropriate proposed resolution of BIS's administrative charges against Fokker, OEE determined that although the case might be a close one, on balance the company did not meet BIS's standard as set forth in the EAR for receiving voluntary self-disclosure credit. A significant factor in OEE's determination was that Fokker's June 2010 submission occurred more than two years after company management indisputably was aware, as set out in the Information in this proceeding, that Fokker had engaged and was engaging in conduct that violated U.S. export control regulations.

In analyzing its administrative cases under the EAR, BIS does not consider individual factors in a vacuum, but assesses all the facts and circumstances in deciding whether, and on what terms, to settle a case. Here, the high degree of cooperation on the part of the company effectively rendered the voluntary self-disclosure issue moot from BIS's standpoint. BIS accorded the greatest weight under the EAR in favor of a settlement to the company's very significant cooperation with the investigation. Indeed—and especially given that it was located outside the United States—much of the information the Government received from the company might have been difficult to obtain in the absence of its disclosure by the company. As discussed above, OEE believes that the proposed global settlement is an appropriate resolution against Fokker, taking into account the totality of the facts and circumstances, including the company's limited ability to pay and remediation steps and its sustained overall cooperation.

Very truly yours,

*/s/ John J. McKenna*

John J. McKenna
Special Agent in Charge, Boston Field Office
Office of Export Enforcement
Bureau of Industry and Security
U.S. Department of Commerce