```
1    UNITED STATES DISTRICT COURT

2    DISTRICT OF CONNECTICUT

3
     UNITED STATES OF AMERICA,  )
4                 Plaintiff,    )          NO: 3:13CR73(MPS)
                                )
5    vs.                        )
                                )          February 15, 2013
6    RBS SECURITIES JAPAN       )
     LIMITED,                   )
7                 Defendants    )          TELEPHONE STATUS
     _____   )                 CONFERENCE
8    UNITED STATES OF AMERICAN, )
                  Plaintiff,    )
9                                )          NO: 3:13CR74(MPS)
     vs.                        )
10                               )
     THE ROYAL BANK OF SCOTLAND )
11   PLC,                       )
                  Defendant.    )
12   _____
                                450 Main Street
13                           Hartford, Connecticut

14   B E F O R E:
             THE HONORABLE MICHAEL P. SHEA, U.S.D.J.
15
     A P P E A R A N C E S:
16   For the Government:        PATRICK F. STOKES,
                                Deputy Chief, Fraud Section
17                              GARY A. WINTERS, Trial Attorney
                                DAN BRAUN, Fraud Section
18                              U.S. Department of Justice
                                Criminal Division
19                              1400 New York Ave., NW
                                Bond Building
20                              Washington, DC 20530

21                              ERIC L. SCHLEEF, Esquire
                                U.S. Department of Justice
22                              Antitrust Division
                                The Rookery Building
23                              209 South LaSalle Street
                                Suite 600
24                              Chicago, IL 60604
      Reporter:         Martha C. Marshall, RMR, CRR
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

```
1
      A P P E A R A N C E S(Continued):
2

3
      For the Defendants:        DAVID RASKIN, ESQUIRE
4                                 BENJAMIN A. BERRINGER, ESQ.
                                  Clifford Chance
5                                 31 West 52nd Street
                                  New York, NY 10019
6
                                  JOSEPH MARTINI, ESQUIRE
7                                 Wiggin & Dana
                                  Two Stamford Plaza
8                                 281 Tresser Boulevard
                                  Stamford, CT 06901
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Hi.  This is Mike Shea.  Can counsel

2     please identify themselves.

3          MR. STOKES:  Your Honor, from the government's side,

4     you have Patrick Stokes, Gary Winters, and Dan Braun, B R A U

5     N, from the Fraud Section.  You also have Eric Schleef from

6     the Antitrust Division.

7          THE COURT:  Good morning.

8          MR. RASKIN:  Good morning, your Honor.  This is

9     David Raskin of Clifford Chance for the Royal Bank of

10    Scotland.  With me in my office is Ben Berringer, who is also

11    with Clifford Chance, and we also have Joe Martini of Wiggin

12    & Dana who is local counsel on the matter.

13         THE COURT:  Good morning.  Thanks for calling in.

14         First of all, I did receive and review letters from

15    both the government and Mr. Raskin, and I found them quite

16    helpful and informative.  So thank for that.  I wanted to

17    talk about -- and I have had a chance now to review the

18    papers more carefully so it's good that we've having this

19    call.  There's three or four items I wanted to discuss this

20    morning.

21         First, I wanted to go over a little bit more what I

22    have in mind for the hearing that I would propose that we

23    have.  On that, I did look at the references in the two

24    letters to not having a hearing.  I don't really agree that

25    that's the right approach.  In particular, I don't think this

1   is really like an initial appearance under Rule 5.  It is an

2   initial appearance in one way, but I think given that an

3   information is going to be filed and given that Rule 5 really

4   seems to be about arrests, I think this is really more like a

5   Rule 10 arraignment and so I do think there needs to be a

6   plea much like Judge Preska's case.  I think that's more or

7   less how I propose to proceed with regard to the DPA.  And

8   then, of course, I have to make a finding under the Speedy

9   Trial Act provision that you both have referenced.

10          I do think I'm generally in agreement with the

11   thrust of the letters as to the scope of my review under the

12   Speedy Trial Act.  I think I'm generally in agreement with

13   you on that subject.

14          But with regard to the hearing, I think what I would

15   again propose -- I think I talked a little bit about this

16   last time -- would be to have -- for the DPA to have the

17   parent have a duly authorized corporate representative

18   present to waive the parent company's right to indictment in

19   open court.  And I think we talked last time about the -- I

20   think, Mr. Raskin, you were able to satisfy me based on our

21   discussions that you would have a person there both for the

22   parent and for the Japanese subsidiary that we'll talk about

23   in a minute that would, in fact, be duly authorized.  I don't

24   propose to go over that again.  So that's the first thing.

25   And then I would like on the record a presentation from both

1  parties why the Court should approve the DPA under

2  3161(h)(2).  I'll talk more about that in a minute.  And

3  then, third, have the government file the information.

4  Fourth, have the parent plead not guilty to the information.

5  And then assuming all that's done to the Court's

6  satisfaction, I would enter an order excluding the time under

7  3161(h)(2).

8          Now, since we've reached that point in the

9  discussion, I will tell you that with regard to the timing,

10  my thinking is that what's appropriate for me to do, having

11  reviewed the agreement, is to exclude the time for two years,

12  which is defined as the term of the agreement.  And then if

13  the government wants to come back at some point and say that,

14  well, for whatever reason we want an additional year, I would

15  take that up at that time.  But I think what I have in mind

16  is that I think I can get comfortable excluding for two

17  years.

18          I'm going to give you guys a chance to talk.  I'll

19  just finish going through what I have in mind for this

20  hearing.  And then with regard -- and that would be sort of

21  the outline for the hearing with regard to the parent.

22          With regard to the subsidiary, the second part of

23  the hearing, the idea would be to enter a guilty plea, waive

24  the right to indictment in open court, have a duly authorized

25  representative of the subsidiary do that, and waive all the

1    other rights necessary to enter a valid guilty plea.  Have

2    the government file the information, have the duly authorized

3    representative enter the guilty plea.

4          Now, it is a (c)(1)(c) agreement.  I would defer

5    acceptance of the plea agreement until I had an opportunity

6    to fully consider the Presentence Report.

7          Let me stop there and ask so far if there are any

8    questions or comments?  There are some other things I need to

9    raise with you, but let me stop there and see if you have any

10   questions or comments so far.

11          MR. STOKES:  Not from the government, your Honor.

12          MR. RASKIN:  And not from the bank.

13          THE COURT:  All right.  So that sort of confirms

14   sort of what I have in mind for the hearing.

15          MR. STOKES:  Your Honor, I'm sorry, this is Patrick

16   Stokes.  There is one issue I don't think we need to address

17   right now, but let me just flag it because it does relate to

18   the hearing for the plea.  The government believes that we

19   should file a motion with the Court to obtain authorization

20   to provide notification to potential victims through

21   alternative means.  And so that is something I think that we

22   would file certainly in advance of the hearing and there may

23   be victims present at the plea hearing.

24          THE COURT:  Okay.  Thank you for raising that.  And

25   that's under the Victim's Rights statute?

1          MR. STOKES:  That's right, your Honor.

2          THE COURT:  Thank you for raising that.  I'll tell

3    you what, is there any reason that you wouldn't be able to

4    provide us with a copy of that before it's filed?

5          MR. STOKES:  Absolutely.  In other words, I may be

6    able to, as early as next week, be able to provide you a copy

7    of the motion.  The trickier part is we just have to put

8    together the language for the notification itself, but that

9    shouldn't take too long.  I should be able to provide you

10   with a copy of that.

11         THE COURT:  Let's plan on that, because I want to

12   make sure.  Obviously, I know everybody's done a lot of hard

13   work putting this together and my goal is to try to play the

14   role that I'm assigned to play responsibly, but also taking

15   account of all the hard work you guys have done to put this

16   together.  So I want to make sure, you know, to the extent we

17   can, that the hearing goes smoothly.  So if I could take a

18   look at that ahead of time that would be helpful.

19         So there are a few issues I do need to raise,

20   though.  The first relates to Attachment C.  Attachment C is

21   not included in the materials that were provided to me.  It

22   is a part of the agreement.  I think, although I agree that

23   my role under the Speedy Trial Act is limited, I do think

24   that role would encompass the need to see the entire

25   agreement.  And I understand from the representations in the

1  agreement that Attachment C relates to an ongoing

2  investigation.  I'm sensitive to that.  There are procedures

3  that we have here in the motion to seal procedure in

4  particular to deal with that, but I think I need to see it.

5       MR. STOKES:  Your Honor, I certainly -- this is

6  Patrick Stokes.  I certainly understand the Court's request

7  and why the Court's making that request.  To expand a little

8  bit on our concerns with this, the Attachment C certainly

9  furthers the Court in recognizing that was incorporated into

10 the DPA at a time when we were certainly not entirely sure

11 how the process of the filing would happen and was not

12 contemplated that it would proceed in the manner we're

13 proceeding on.  So that's why it was incorporated in that

14 way.  But part of our reason for not making that a court

15 filed document is that it's certainly a very sensitive

16 document that relates to ongoing investigations that are

17 simply not investigations that may bear fruit, they may bear

18 fruit but, in any event, it's not information that we believe

19 is necessary to be provided to the public.  However, once it

20 becomes a court filed document it is certainly subject to

21 motion by others, and we don't think that there's a basis for

22 others to obtain information about the Department's ongoing

23 investigations and we're concerned that there will be First

24 Amendment challenges and other sorts of challenges that we

25 would then have to defend against in order to keep our

1    ongoing investigations confidential, which is certainly how

2    all ongoing investigations are treated by the Department.

3    And so that's the main concern that we have.  So if the Court

4    insists on seeing a copy, then perhaps we can do this in an

5    ex parte proceeding to give the Court some comfort, but we

6    don't believe it's necessary for it to be part of the

7    document, the filed document.  And so because of the nature

8    of the document and the nature of the ongoing investigation,

9    we would ask that we proceed differently.  As I mentioned,

10   one possibility would be an ex parte in camera review of

11   Attachment C.

12           THE COURT:  Let me ask what do you mean by ex parte.

13   I had assumed since it was referenced several times in the

14   agreement that Mr. Raskin would have seen this agreement.

15           MR. STOKES:  Mr. Raskin certainly has, no question

16   about that.  But perhaps maybe a better way to phrase it is

17   an in camera review so that the Court has some comfort, but

18   it not be made part of the court filing and that it then be

19   returned to the parties.

20           THE COURT:  Let me ask this.  I'm not sure I'd be

21   inclined to do it that way.  The concerns you raise are, of

22   course, legitimate, valid, important concerns, and they're

23   concerns I want to accommodate, but I want to do it in a way

24   that I think is consistent with our procedures here.

25               There's two things I can think of and maybe

1    Mr. Martini can weigh in on this as well.  One thing I know

2    that some judges do here is with cooperation agreements they

3    essentially hang on to them until, I think, after sentencing.

4    And here I suppose the analogue would be literally to hang on

5    them in Chambers in a sealed envelope.  And then they file

6    them on the docket after sentencing.  And here I think the

7    analogue would be to file something on the docket after the

8    Court, assuming the DPA were to go through without a hitch,

9    and assuming everybody were to comply and the government were

10   to move to dismiss the information, that's when the Court

11   would consider, you know, filing it.  Let me stop there and

12   ask if that is a procedure that would work here.

13            MR. STOKES:  Your Honor, our concern about that is

14   that particularly if at a later stage we decide not -- well,

15   under two circumstances we would have concerns.  One, if we

16   decide not to proceed, we don't know that, the fact that the

17   government has not decided to pursue certain investigations

18   or that it ran certain matters to ground and doesn't believe

19   criminal charges are warranted, that that could be made part

20   of the public record.  And the other is that certainly at the

21   end of the -- at the termination of the term of the DPA, it

22   may be that these investigations are ongoing, and the terms

23   of the DPA still require the bank to cooperate even after the

24   term has expired and that it cooperate with ongoing

25   investigations.  And so that would at that time make public

```
1    what could be the government's ongoing investigation.
2         THE COURT:  Well, another way to deal with that
3    would be to follow the procedure -- a way to address that
4    concern I think would be to follow the procedure outlined,
5    but then for the Court to once immediately upon filing to
6    order it sealed.  Just like the Court orders things sealed
7    all the time.
8         MR. STOKES:  Understood.  And our concern with that,
9    again, is that we anticipate that third parties may or would
10   even attack the sealing order and seek access to it since
11   it's part of the court records.  And so we would then be
12   grappling with that litigation.  Certainly, it is our
13   preference to have it sealed if it is part of the record.
14   It's our strong preference to have that done.  But we think
15   we're going to end up in a posture where we're going to have
16   to defend internal government records of ongoing
17   investigations.
18        THE COURT:  Your concern is well-taken.  I'm just
19   looking for a way to accommodate it that I think would be
20   consistent with the way that I think the Court's procedures
21   require or that I'm ultimately comfortable with.  I think the
22   proceeding as I suggested -- well, let me stop.  I would be
23   interested in Mr. Martini's views.  He was in the U.S.
24   Attorney's Office here a long time.  He knows, frankly, at
25   this point better than I do how a lot of my colleagues and
```

1    former colleagues have dealt with cooperation agreements.  So

2    I would be interested in his views on whether he has any

3    suggestions on how to proceed here.

4         MR. MARTINI:  Thank you, your Honor.  In the old

5    days we would do everything at side-bar and have a colloquy

6    about sealing the cooperation agreement, for example.  As

7    your Honor pointed out, that procedure has changed to now the

8    Court holds the documents in Chambers in sealed envelopes and

9    proceeds as you described.  So by doing it that we still run

10   into the same sort of problems we've been talking about which

11   is the government's perspective.

12        THE COURT:  So are you aware of judges here who have

13   basically reviewed things in camera and then simply returned

14   them to the parties?

15        MR. MARTINI:  I would have to think about that a

16   little bit, your Honor.  The situations where I've had, for

17   example, cooperation agreements, the Court is holding them

18   and then return them, I believe.

19        THE COURT:  I will check with my colleagues on that.

20   I had thought that what the Court did is they held them

21   essentially until a point where everybody was confident that

22   there was going to be no risk to compromising any

23   investigations and then they filed it on the docket.  I know

24   of judges here who do that.  But I'll tell you what, I

25   will -- I am sensitive to these concerns and obviously I want

1   to get this right.  So I will confer with my colleagues about

2   this, see if they have any suggestions, and then let you

3   know.  I'm going to need to see it one way or the other, but

4   I am sensitive to the concerns you've raised and I intend to

5   try to work with you on that.

6          MR. STOKES:  Your Honor, this is Patrick Stokes.

7   Let me raise another possibility.  For example, with a plea

8   agreement, it is while perhaps unusual, a term that there are

9   no other side agreements or if they are that they're

10  disclosed.  And certainly there are occasions where parties

11  have agreements of some nature that are not contained within

12  a plea agreement that may be disclosed to the Court, the

13  general nature of that agreement, but the agreement itself

14  isn't documented.  Two thoughts of that here.  One is that

15  since this document is not at this time filed, if the parties

16  could discuss off line and then reconvene with the court at a

17  later time, whether it just makes sense to remove the

18  Attachment C and have that as a document between the parties

19  documenting what the ongoing investigations are.  We

20  currently indicate in the DPA that the government does

21  have -- that the bank will cooperate with the government

22  ongoing investigations and on certain matters.  I'm certainly

23  not asking the bank to take a position on this right now.

24  But that may be a way of removing the issue for the court, by

25  taking out the document.  And we can either simply by having

1    a general reference to this in the agreement that may address

2    the Court's concerns, or if the Court feels that that's sort

3    of side agreement, we could describe the general nature of it

4    during the hearing and without identifying the specific

5    issues that are part of our ongoing investigation and the

6    parties simply have a record of what those are.

7         THE COURT:  I'll think about that.  I'm not real

8    comfortable with it simply because it does look like there's

9    a hidden -- there is a hidden side agreement, right, and

10   that's the whole point of this.  We're at least identifying

11   clearly that there is one in the existing document, but I

12   will think about it.

13        MR. MARTINI:  There's a local rule on this, too,

14   which we should all look at.  It's Rule 57.

15        MR. STOKES:  And, your Honor, to the point of it

16   being a hidden side agreement, what I would point out, I

17   think most cooperation plea agreements indicate this there

18   will be ongoing cooperation and, as part of that, the parties

19   typically do not disclose to the Court the specific nature of

20   the ongoing cooperation or what information has been provided

21   to date.  It's recognized that when individuals in those

22   sorts of plea agreements come forward that they are providing

23   information to the U.S. Attorney's Office and to the

24   government and that is not considered hidden.  It's addressed

25   in a general way in the court documents.  And so that's what

1    we're talking about here, is addressing it in a general way

2    as opposed to making a specific -- identifying specifically.

3           THE COURT:  I hear you.  The issue I guess I'm

4    having with that is, of course, now I already know.  Sort of

5    the Court, as the public body, already is aware of the kind

6    of at least to some degree of the Attachment C in sort of

7    some general sense so we'd sort of be hiding it from --

8           MR. STOKES:  Fair enough.  I'm just addressing the

9    issue of hiding.  To be clear for the record, we have

10   absolutely no intention of hiding anything.

11          THE COURT:  It was a bad choice of words.

12          MR. STOKES:  It was very clear the very nature of

13   this so that there's no claim of hiding, the point is is that

14   by removing the document itself from the agreement,

15   describing the nature of the agreement itself, may simply be

16   enough for the Court, which is similar to what is done in

17   plea agreements with individuals, but I understand the

18   Court's concerns.  I'm just clarifying that point on the

19   hiding.

20          THE COURT:  That was my choice of words and it

21   wasn't a good one.  Let's table this for a minute.

22          Attorney Martini points out, although it looks like

23   most of Rule 57, in relevant parts, is similar to the civil

24   rule on sealing, but I will look at that more carefully.

25   Thank you for bringing that to my attention.  Let's table

1   this for a minute.

2           The next issue I wanted to discuss -- I discussed a

3   term already.  The plea agreement with the Japanese

4   subsidiary.  That agreement is, as you know, a (c)(1)(c)

5   agreement so it's sort of take it or leave it for me.  And it

6   has a provision in it that I find a little troubling, which

7   is the provision that leaves in the government's sole

8   discretion to determine a breach.  I view that provision a

9   little differently from the analogous provision in the DPA.

10  I think you guys have convinced me that with regard to a DPA

11  it's not my role and, frankly, it's not within my purview to

12  approve the substantive provisions of the DPA.  And, in fact,

13  you know, when I make an order approving the exclusion of

14  time, I'm not going to be approving the substantive

15  provisions of the DPA.  But the plea agreement stands on a

16  different footing, especially inasmuch as it's a (c)(1)(c)

17  agreement which really is, in effect, the sentence to be

18  imposed which really is very much in the Court's purview.

19  And as you all know, usually the Court determines whether

20  there's a breach of a plea agreement.  And so I'm concerned

21  about that and I don't know -- do you want to try and address

22  that concern now?  To be candid, I'm not sure that I'd be

23  inclined to accept a plea agreement with that provision in

24  it, but I'll certainly hear from you on that.

25           MR. STOKES:  Sure, your Honor.  I think that's

1    something that we should probably get back to you on.  It is

2    certainly our experience in many districts that that is

3    standard language, that the government determines whether

4    there's a breach of a -- what this is similar to a

5    cooperation plea agreement.  And the government determines

6    whether there's a breach of that, of the cooperation or the

7    terms of the agreement since it's a contract between the

8    parties.  And so the government -- that is certainly our

9    experience that the government does that.  However, what I

10   can't address at this time is whether that's a standard term

11   in Connecticut.  And so would I like to talk to the

12   prosecutors there, because I want to make sure that, you

13   know, that we're being consistent with their practice.  But,

14   again, typically we, across the country, have provisions in

15   cooperation plea agreements where we've struck a deal where

16   we've agreed not to pursue other charges that we would

17   otherwise be able to pursue that the defendant would have to,

18   you know, perform certain ongoing actions and if they breach,

19   then the government can withdraw from that contract.  And

20   certainly the defendant has the opportunity to challenge that

21   with the government, but the extent of that challenge is, you

22   know, is handled differently in different districts.  And so

23   we just want to make sure that we are consistent with

24   Connecticut so that you're comfortable with that.  We use it

25   quite frequently.

1          THE COURT:  I will tell you did I did reach out to a

2    couple of my colleagues about that provision and they had the

3    same concern that I did.  I haven't reached out to everybody

4    yet, but I did have time to reach out to a couple of them.

5    But I do welcome if you want to check in with the U.S.

6    Attorney folks here and talk to them about it and get some

7    information, that would be helpful, because I do have that

8    concern.

9          Okay.  Well, let me suggest this.  Again, given all

10   the work that's gone into this, I do want to do my best to

11   obviously accommodate the important concerns that you've

12   voiced and get this right.  And so from my perspective,

13   there's no rush here.  I don't know -- we don't have to set a

14   hearing now, but I do want to hear from you as to your views

15   or needs as to timing.

16         MR. STOKES:  From the government's end, your Honor,

17   I think the timing of a hearing is -- we would want to make

18   sure that that corresponds with the time we would need for

19   giving victim notification.  And so typically we provide

20   notice through -- so the Court understands what we're

21   intending to propose to the Court, we will file a motion

22   seeking authority and order from the Court allowing us to

23   provide notice under 3663 -- 18 U.S.C. 3663A(c)(3)(a) or (b)

24   to provide alternative -- I'm sorry.  I'm sorry, your Honor.

25   It's under 18 U.S.C. 3771(d)(2).  I misspoke.

1          THE COURT:   (b)(2)?

2          MR. STOKES:   D, as in David, 2.   To provide

3    alternative notification and due to the difficulty of

4    identifying victims in this case.   And so we would seek to do

5    notification from publications through various national

6    media.   And so we would need the Court to review such a

7    motion, issue an order permitting us to do that, and then we

8    would seek publication and alerting potential victims to the

9    court hearing, as well as giving them a means of continuing

10   to track proceedings going forward.   That will take some

11   time.   And I don't know what the Court -- certainly

12   understand that the Court may need some time to review the

13   motion.   I would say that for us, once the Court issues the

14   order, we would need approximately two, maybe three weeks for

15   the publication to alert victims and before any such hearing.

16   So I would say from our perspective that mid March is

17   probably the earliest that we should have a hearing.

18          THE COURT:   Now, of course, that raises kind of a

19   cart before the horse issue or sequential issue, right?

20   Because right now there's no criminal case that's been filed.

21   And so I'm going to need to check with the Clerk's Office

22   because you're going to want to -- it's great to send me the

23   motion ahead of time, but I think you're going to need to

24   file that motion on the docket and I'm going to need to make

25   a finding under the provision that you've just referenced if

1    we're going to want -- let me ask -- well, no, you're right,

2    under the Crime Victim's Statute they would have a right to

3    be present at the arraignment.

4              MR. STOKES:  And, your Honor, I would say that

5    typically the Department -- in many instances the Department

6    takes the position that in a preindictment plea context that

7    we don't have an obligation to give notice to victims.

8    However, here, where there has been public discussion of the

9    agreement and the DPA we think, in an abundance of caution,

10   we should do so.  We recognize this is perhaps an unusual

11   circumstance, however, the Court, if the -- ultimately the

12   Court can guide us on whether or not we, in fact, have to

13   give notification.  We simply want to file the notion with

14   the Court to give alternative notification to ensure that

15   we're --

16             THE COURT:  Let me ask you this.  I don't see that

17   this provision expressly requires the filing of a motion.

18   And what I mean by that -- you guys tell me if I'm wrong

19   about this -- but what I mean by this, obviously I'm going to

20   need input from you and documents from you showing what a

21   reasonable procedure to give affect to this chapter, I'm

22   reading from the provision, in a case involving multiple

23   crime victims would be, because I have no idea.  And so I'm

24   going to need input from you on that in a letter or something

25   like that, but it's not clear to me that I would need a

1    motion.  And the reason that matters is for the reason I

2    mentioned a minute ago which is we have this kind of weird

3    situation where there is no criminal case that's been opened

4    and what I had been contemplating is all this happen at once

5    at a hearing, but what you're pointing out is, well, people

6    need to be invited to that hearing in essence.  But that

7    could be done, I would think -- I'm just trying -- I'm

8    thinking out loud here, is whether that could be done without

9    the filing of a formal motion.

10           MR. STOKES:  Your Honor, I do agree that if the

11   Court would prefer, we could proceed by letter to describe

12   the nature of what we're seeking and give the Court

13   sufficient guidance to make a determination whether

14   notification, alternative notification is appropriate.  I

15   understand the procedural issue the Court's pointing out and

16   hadn't contemplated that.  We certainly would not object to

17   just providing a letter to the Court and identifying the

18   notice that we would give so the Court has sufficient basis

19   for determining whether that's adequate under the Crime

20   Victim Rights Act.

21           THE COURT:  Would the defendant have any objection

22   to proceeding in that particular way?

23           MR. RASKIN:  No, your Honor.

24           THE COURT:  Why don't we plan on that.  That is, you

25   guys can send me another letter outlining a reasonable

procedure for notification in light of the hearing that we've

discussed and in light of the fact that there are multiple

crime victims here under the statute.  That we certainly

should plan on.  If you want to address in that letter the

other topics we've raised in this call that would be fine.

In particular, the one we discussed a moment ago about the

provision in the plea agreement allocating sole discretion to

the government to determine whether there's been a breach.

If you want to include, after you've had a chance to confer

with the AUSA's here, and you want to just set that forth in

the letter, that would be fine, too.  You don't have to do

that if you don't want.  But if you want to report to me on a

call on that thats fine, too.

When do you think realistically you'll be able to

send me such a letter?

MR. STOKES:  Your Honor, I think that we could

probably have this done by the end of next week.  We

will -- there are a number of moving parts that we need to

address here on the Crime Victim Rights Act issues.  So I

think we should be able to do that and have a letter drafted

by the end of next week and, to the extent necessary, address

any issues related to the plea agreement by then.

THE COURT:  That's good.  By then I will have had a

chance to caucus with my colleagues about the other issue

that we discussed, the Attachment C issue, and have better

1    guidance for you on that one.

2            MR. STOKES:  Okay.  And, your Honor, I would ask

3    that then, if the Court is okay, then we file the letter the

4    end of the next week, and then we have a follow-up discussion

5    sometime after Monday, the 25th

6            THE COURT:  Absolutely.  We'll definitely have

7    another phone call.  I'm just looking at my calendar.  Hold

8    on one second.

9            Would you guys be available for a call on March 1st

10   at two o'clock?

11           MR. STOKES:  One second, your Honor.  Yes, your

12   Honor.

13           THE COURT:  How about the defendant?

14           MR. RASKIN:  Yes, your Honor.

15           THE COURT:  Great.  Let's plan on March 1st at two

16   o'clock.  And you'll send me a letter before then and we'll

17   plan to, you know, address these issues and any other issues

18   that come up at that time.

19           MR. STOKES:  Your Honor, if I may, when I committed

20   to having a letter to you by the end of next week, I do have

21   to take into account other folks schedules on my end.  If we

22   needed to move that, if we got the letter to you on the

23   26th --

24           THE COURT:  That's fine.

25           MR. STOKES:  Would that be okay?

1              THE COURT:  Yes, yes.

2              MR. STOKES:  Thank you.

3              MR. RASKIN:  And, your Honor, this is David Raskin.

4    Just before we close, the bank has a strong position on the

5    Attachment C issue, I believe in the same position as the

6    government.  And just to put a fine point on it.  While the

7    concept is obviously important for the Court to know about

8    and consider in analyzing the various issues with respect to

9    the DPA, the specifics of that attachment, in the bank's

10   view, are not what's important.  It's the nature of what it

11   is.  And so I think our preliminary view, the bank's

12   preliminary view, is that while it's something the Court

13   should look at and be aware of, the document itself wouldn't

14   necessarily need to be part of the record because the

15   specifics are not what's important in terms of -- in terms of

16   the document itself.  So a procedure where the Court looked

17   at it, maybe described it generally on the public record, but

18   without reference to any specifics is something that the bank

19   would certainly consider a proper way to go forward.  And I

20   just wanted to put that on the record.

21             THE COURT:  It might help me if -- since I am going

22   to be raising this issue with my colleagues -- it might help

23   if someone could characterize a little bit what's in

24   Attachment C so I can accurately describe it when I seek

25   advice from my colleagues.

1          MR. RASKIN:  Patrick, you can go ahead.  I have no

2    problem with a general characterization from the bank's

3    standpoint, even on the public record.

4          THE COURT:  No, no.  All I'm asking for right now

5    is -- I have no idea what's in Attachment C, other than it

6    apparently relates to an ongoing investigation.  I would like

7    to know a little bit more about it so that I can think about

8    how to handle the question that we discussed which is -- I

9    mean, I'm going to need to see it one way or the other, but

10   we've discussed a few different options.  One, sort of

11   entirely in camera where I return it to the parties and I

12   don't see it again.  Two, what I came up with which was I

13   retain a copy in a sealed envelope in Chambers and it gets

14   filed at some point in the future, probably under seal.  I

15   understand people have objections to that and I haven't

16   decided to go that route.  But before I can think about it

17   more, I would like to know a little bit more about what it

18   is.

19         MR. STOKES:  Your Honor, this is Patrick Stokes.  I

20   certainly understand that and, you know, have no objection to

21   ensuring that the Court has complete understanding of it as

22   necessary.  Perhaps the best thing is for Mr. Raskin and the

23   government off line to talk about how exactly to do that.

24   And I think we can simply draft a letter to the Court.

25         THE COURT:  That would be fine.

1          MR. STOKES:  But, again, I don't want to commit

2    Mr. Raskin to anything.  So we can talk to him off line about

3    how to publicly do that.  But the government has no objection

4    to making sure the Court is aware of the nature of the

5    document.  I think the DPA itself sheds some light on that,

6    but we can certainly provide additional information to the

7    extent the Court wants that.

8          THE COURT:  Yes, that would be helpful.  And on

9    that, look, everybody has time constraints.  I will tell you

10   the sooner you can get me that information the better.

11         MR. STOKES:  Okay.

12         THE COURT:  Okay.  Great.  Thank you.  Is there

13   anything else to discuss today?

14         MR. RASKIN:  Not from the bank, your Honor.

15         MR. STOKES:  Not from the Government.

16         THE COURT:  Thank you, gentleman.  Have a good

17   weekend.

18         (Concluded.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3            I, Martha C. Marshall, RMR, CRR, hereby certify that

4      the foregoing pages are a complete and accurate transcription

5      of my original stenotype notes taken in the matter of UNITED

6      STATES V. THE ROYAL BANK OF SCOTLAND plc and UNITED STATES V.

7      RBS SECRUITIES JAPAN LIMITED, which was held before the

8      Honorable Michael P. Shea, U.S.D.J, at 450 Main Street,

9      Hartford, Connecticut, on February 15, 2013.

10

11

12

13                              _____
                                Martha C. Marshall, RMR,CRR
14                              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25